Case No. 23-1825

In the United States Court of Appeals
for the Seventh Circuit

---

CALEB BARNETT, et al.,
*Plaintiffs-Appellees*,

v.

KWAME RAOUL, et al.,
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Southern District of Illinois
Case No. 3:23-cv-00209-SPM
Honorable Stephen P. McGlynn

---

**FEDERAL FIREARMS LICENSEES OF ILLINOIS PLAINTIFFS-APPELLEES' OPPOSITION TO STATE APPELLANTS-DEFENDANTS' EMERGENCY MOTION TO STAY THE DISTRICT COURT'S PRELIMINARY INJUNCTION PENDING APPEAL**

---

C.D. Michel
Anna M. Barvir*
Konstadinos T. Moros*
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com
*Application for admission pending

Mark L. Shaw
SHAW LAW LTD.
33 North County St., Ste. 300
Waukegan, IL 60085
(847) 244-4496
mlshalw@shawlawltd.com

*Attorneys for Plaintiffs-Appellees*

May 9, 2023

## TABLE OF CONTENTS

**Page**

Table of Contents ............................................................................................................. i

Introduction ................................................................................................................... 1

Argument ....................................................................................................................... 1

I.    The State's Gambit of Seeking a Stay from this Court Without First Giving the District Court a Reasonable Opportunity to Consider that Request Violates Rule 8 .................................................................................................... 1

II.    The Irreparable Harms to Plaintiffs-Appellees Favor Reinstatement of the District Court's Preliminary Injunction ....................................................... 4

Conclusion ..................................................................................................................... 8

# INTRODUCTION

In response to the State Defendants' Emergency Motion to Stay the District Court's Preliminary Injunction Pending Appeal, Plaintiffs-Appellees Federal Firearms Licensees of Illinois, et al., join in full the response brief filed by plaintiffs-appellees in *Barnett v. Raoul*, Case No. 23-1825, which the Court consolidated with this appeal for briefing and argument on May 3, 2023.

Plaintiffs-Appellees write separately, however, to address the State's motion's disregard of rule 8 of the Federal Rules of Appellate Procedure and to briefly detail the distinct harms faced by their members and supporters should this Court grant the State's request for emergency relief.

# ARGUMENT

## I. THE STATE'S GAMBIT OF SEEKING A STAY FROM THIS COURT WITHOUT FIRST GIVING THE DISTRICT COURT A REASONABLE OPPORTUNITY TO CONSIDER THAT REQUEST VIOLATES RULE 8

On April 28, 2023, the Southern District of Illinois—after full briefing and hearing—preliminarily enjoined the enforcement of Illinois' recently enacted Protect Illinois Communities Act ("PICA"). *See Barnett v. Raoul,* 2023 U.S. Dist. LEXIS 74756, at *1 (S.D. Ill. Apr. 28, 2023) ("*Barnett*"). The injunction did not halt the enforcement of some longstanding state law or policy, but rather enjoined a law that took effect in January 2023, returning to the status quo as it existed in Illinois (and most states) until only a few short months ago. Even so, just days later, the State moved the district court to stay its injunction pending appeal. But before Plaintiffs-Appellees could even respond (on a very abbreviated timeline) as the district court ordered, the State took

1

the extraordinary step of asking this Court to intervene without giving the district court a reasonable opportunity to rule on its pending motion to stay.

Rule 8 of the Federal Rules of Appellate Procedures requires a party seeking a stay from the appellate court to either "(i) show that moving first in the district court would be impracticable; or (ii) state that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action." Fed. Rules App. P. 8(2)(A). The State does not even argue that moving first in the district court would be impracticable; nor could it since it made that very motion below. Nor does the State claim that the district court denied its pending motion, for the district court never even had time to rule on the motion before the State came running to this Court for relief.

Instead, the State claims that simply setting a deadline of May 8, 2023, to give Plaintiffs-Appellees a chance to be heard means the district court "constructively denied" its motion. State's Mot. 3. But this is not the standard. Delay in issuing an injunction is the same as denial only when *irreparable injury* results. *Middleby Corp. v. Hussman Corp.*, 962 F.2d 614, 616 (7th Cir. 1992) (citing *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 379 (1987)). The State is not irreparably injured by returning to the January 9th status quo, which of course requires all firearm purchasers to undergo background checks under state law before purchasing any kind of firearm, even those PICA bans.

Nor has there been "delay" of any kind. Honoring due process by giving the opposing party a short window of time to file an opposition brief does not mean the court has failed to provide the relief requested or has delayed in doing so. On the

contrary, the district court's order, giving Plaintiffs-Appellees just a few short days to respond, illustrated that the court was taking the State's request seriously while, at the same time, respecting Plaintiffs-Appellants due process rights. If the State's view of the rules were to be accepted, however, the appellate courts would likely be overrun with premature and untimely motions for stays whenever a lower court judge simply provided a non-moving party an opportunity to respond to a moving party's request for a stay of enforcement.

Perhaps the State believes the district court is likely to deny the relief it requests, and so it tries to short-circuit the rules and rush to this Court for relief. But that is inappropriate. Indeed, "[t]he State appears to apply a presumption of bad faith on the part of the district court when the appropriate presumption is of course just the opposite." *Whole Woman's Health v. Paxton*, 972 F.3d 649, 654 (5th Cir. 2020) (denying Texas's request for stay as it had not gone to the district court first). "Defendants essentially argue that a party should be able to avoid moving first for a stay in the district court for no other reason than that the party harbors a subjective belief that the motion is likely to be denied." *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, No. 22-3148, 2022 U.S. App. LEXIS 25461, at *4 (6th Cir. Sep. 9, 2022) (denying request for stay and citing *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 43 (1st Cir. 2021) ["We disagree with plaintiff that the district court's rejection of plaintiff's claims on the merits suffices to show that moving first in the district court would have been impracticable."]).

It seems clear that the State was never serious about honoring Rule 8's requirements. It simply went through a bad faith "motion" filing to claim it complied.

For this reason alone, the Court should decline the State's request. It should not reward this behavior just because the government happens to be the party bringing this improper motion.

## II.  THE IRREPARABLE HARMS TO PLAINTIFFS-APPELLEES FAVOR REINSTATEMENT OF THE DISTRICT COURT'S PRELIMINARY INJUNCTION

The Illinois state law at issue bans some of the most popular firearms in the country—firearms that are commonly possessed, lawfully owned, and safely operated by millions of Americans in every state, save for a handful where they have been banned in recent decades. As a matter of fact, until just a few short months ago, residents of Illinois could freely purchase and possess the very firearms the state now restricts. Plaintiffs-Appellants, through their motion for preliminary injunction now on appeal, sought merely a return to that status quo while the many challenges to the Illinois firearm ban make their way through the courts. Relying on a faithful application of the Supreme Court's Second Amendment precedents, including *Bruen*, the district court granted that relief after careful consideration of hundreds of pages of briefing and evidence and extensive oral argument.

This Court should lift the emergency stay this Court entered on May 4, 2023, deny the State's motion, and restore the pre-ban status quo. This relief is crucial because the individual, fundamental rights of countless Illinoisans are at stake. Indeed, PICA is a broad-based ban on a category of firearms—including magazine-fed, semi-automatic rifles—that are among the most commonly used and possessed in America today. And, as explained in the *Barnett* appellees' response, the ban plainly violates the Second

4

Amendment rights of law-abiding Americans to possess these common arms for lawful purposes, including self-defense.

The Court should also reinstate the injunction because the violation of a constitutional right—even for a minute—is the very definition of irreparable harm that warrants preliminary injunctive relief. Indeed, as this Court has held, "[i]nfringements of" the Second Amendment "the right to possess firearms for protection" necessarily inflict irreparable injury. *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011). What's more, "if all cities and municipalities can prohibit gun sales and transfers within their own borders, then all gun sales and transfers may be banned across a wide swath of the country if this principle is carried forward to its natural conclusion." *Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 939 (N.D. Ill. 2014).

Further, the infringement of Appellees' rights is real and imminent. Acquisition of many of the most commonly owned firearms in America is now illegal throughout Illinois. And the continued possession of the now-banned firearms lawfully acquired and already owned has become severely restricted, because the Illinois law not only requires gun owners to register their firearms by January 1, 2024, or dispossess themselves of them altogether, but it also restricts the ability even to travel with previously owned firearms. 720 ILCS 5/24-1.9(C) and (D). As the district court understood, "[a] constitutional right is at stake. Some [p]laintiffs cannot purchase their firearm of choice, nor can they exercise their right to self-defense in the manner they choose. They are bound by the State's limitations." *Barnett*, 2023 U.S. Dist. LEXIS 74756, at *37.

By banning commonly owned firearms and many related activities, the law also has a devastating effect on those engaged in the sale of firearms in Illinois. If this Court grants the relief the State seeks, licensed dealers cannot so much as return firearms on consignment or entrusted to them for repairs. Dealers cannot deliver customer-ordered firearms on sales not yet completed while a background check is performed. And they can no longer sell any firearm in their inventory that the state now classifies as an "assault weapon." 720 ILCS 5/24-1.9(b); *see Barnett*, 2023 U.S. Dist. LEXIS 74756, at *37 ("Moreover, other [p]laintiffs cannot sell their inventory, even to residents of other states that do not ban the 'arms' identified in PICA.").

PICA also bans "parts or any combinations of parts," 720 ILCS5/24-1.9 (I), making it impossible for a gun dealer, gunsmith, or firearm owner to repair a firearm that is now banned but was lawfully acquired before the law took effect. From retaining springs to roll pins, and from triggers to stocks, PICA bans all these parts, effectively banning the repair of broken firearms covered by the law. But even if the parts were not illegal to possess, PICA also bars the transfer of any banned firearm or part after January 9, 2023 (with limited exceptions). 720 ILCS5/24-1.9(e). So a person who left a firearm with a gunsmith for repair cannot retrieve it from the FFL because the transfer back to the owner is now illegal.

As a result of these restrictions, many FFLs and ranges have lost and will continue to lose substantial revenue absent a court order (again) halting the enforcement of these plainly unconstitutional laws. Indeed, Appellees presented evidence that some FFLs saw reductions of *up to 60%* in their business when the law went into effect. And due to the sweeping nature of the State's arms ban—which bans

the sale of not only firearms, but many parts, accessories, and magazines—many Illinois FFLs may soon be put out of business.

To be sure, economic injuries are not generally considered "irreparable" because such harm can usually be compensated by damages. "But where, as here, the plaintiff in question cannot recover damages from the defendant due to the defendant's sovereign immunity," *Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008), "any loss of income suffered by a plaintiff is irreparable per se." *Id*; *see also Cmty. Pharmacies of Ind., Inc. v. Ind. Fam.*, 801 F. Supp. 2d 802, 806 (S.D. Ind. 2011) ("because the [s]tate is the [d]efendant in this matter, the [p]laintiffs cannot recover monetary damages due to the sovereign immunity afforded under the Eleventh Amendment."). The district court expressly acknowledged that harm as one of the reasons for granting the injunction: "because [p]laintiffs can never recover their financial losses irreparable harm exists." *Barnett*, 2023 U.S. Dist. LEXIS 74756, at *18. Restoring preliminary injunctive relief and ending that harm while this case proceeds is thus both necessary and appropriate.

Unlike the severe and irreparable harms that enforcement of the arms ban invites upon Appellees and their members and supporters, there can be "no harm to a [government body] when it is prevented from enforcing an unconstitutional statute." *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004); *see also Does v. City of Indianapolis*, Case No. 06-cv-865, 2006 WL 2927598, at *11 (S.D. Ind. Oct. 5, 2006) ("Defendants will not be harmed by having to conform to constitutional standards, and without an injunction, plaintiffs will continue to be denied their constitutional rights").

Even still, the State makes little more than a now-forbidden interest-balancing argument, suggesting that a mass shooting could result if its ban on so-called "assault

weapons" is enjoined even temporarily. Emergency Mot. to Stay Prelim. Inj. Pending Appeal, *Barnett v. Raoul*, No. 23-1825, at 19 (7th Cir. May 2, 2023). Unsurprisingly, the State provided no analysis of the potential self-defense benefits of such firearms. There is, regrettably, always a danger that deranged individuals will commit horrific crimes— whether with the firearms Illinois has outlawed, with other firearms it permits, or with different objects entirely. But the potential criminal abuse of a constitutional right alone cannot be reason enough to snuff out that right. *See McDonald v. Chicago*, 561 U.S. 742, 783 (2010) ("[t]he right to keep and bear arms … is not the only constitutional right that has controversial public safety implications)." As the Supreme Court made clear in *Heller*, it is "aware of the problem of handgun violence in this country. . .. The Constitution leaves the [government] a variety of tools for combating that problem. . .. But the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008).

## CONCLUSION

For these reasons, and those further laid out in the response brief of the *Barnett* appellees, which Appellees join in full, this Court should deny the State's motion to stay the injunction pending appeal.

Dated: May 9, 2023　　　　　　　　　　Respectfully submitted,

**MICHEL & ASSOCIATES, P.C.**

s/ C.D. Michel
C.D. Michel
*Attorneys for Plaintiffs-Appellees Federal Firearms Licensees of Illinois, et al.*

# CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2023, an electronic PDF of FEDERAL FIREARMS LICENSEES OF ILLINOIS PLAINTIFFS-APPELLEES' OPPOSITION TO STATE APPELLANTS-DEFENDANTS' EMERGENCY MOTION TO STAY THE DISTRICT COURT'S PRELIMINARY INJUNCTION PENDING APPEAL was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Dated: May 9, 2023                    Respectfully submitted,

**MICHEL & ASSOCIATES, P.C.**

s/ C.D. Michel
C.D. Michel
*Attorneys for Plaintiffs-Appellants*